IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 25, 1999

## JOHN PAUL SEALS v. JAMES BOWLEN, WARDEN, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No.98-3535-III    Ellen Hobbs Lyle, Chancellor**

---

**No. M1999-00997-COA-R3-CV - Filed July 26, 2001**

---

Petitioner, a state inmate, filed the underlying *pro se* petition for a writ of certiorari to challenge the result of a disciplinary proceeding against him. The trial court dismissed the suit for failure to state a claim. We reverse the dismissal of all parties except the Department of Correction and affirm the dismissal for failure to state a claim.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed in Part, Affirmed in Part and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, J., joined.

John Paul Seals, Pro Se, appellant.

Arthur Crownover, II, Nashville, Tennessee, for the appellees, James Bowlen, Warden, Southeastern Tennessee State Regional Facility Disciplinary Board, and the Tennessee Department of Correction.

### OPINION

This case involves a *pro se* petition for a writ of certiorari filed by a state prisoner.

I. Facts

Appellant John Paul Seals is an inmate who seeks review of actions taken against him by the Disciplinary Board at Southeastern Tennessee State Regional Correctional Facility in Pikeville ("the board") and Tennessee Department of Correction officials. The disciplinary actions at issue were imposed after the board found that Mr. Seals had assaulted his cellmate.

Mr. Seals appealed the board's decision, and after the warden rejected the appeal, Mr. Seals filed an application for a writ of certiorari in the court below. The State moved to dismiss for failure

to state a claim, on the grounds that (1) only the Department of Correction was a proper party under Tenn. Code Ann. § 27-9-104 and (2) Mr. Seals's petition failed to allege that the board had exceeded its jurisdiction or acted illegally or arbitrarily.  The trial court granted the motion on those grounds. Mr. Seals appeals that decision.

## II. Standard of Review

A  Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of the petitioner's proof.  *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994).  The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to constitute a cause of action.  *Id.*  In resolving the issues in this appeal, we are required to construe the complaint liberally in the plaintiff's favor and take the allegations of the complaint as true.  *Bell v. Icard, Merrill, Cullins, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999).  Our standard of review on appeal from a trial court's ruling on a motion to dismiss is *de novo*, with no presumption of correctness as to the trial court's legal conclusions.  *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

The scope of our review is also defined  by the procedural vehicle Mr. Seals correctly utilized to assert his claim, the petition for common law writ of certiorari. *Rhoden v. State Dep't. Of Correction,* 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing *Bishop v. Conley*, 894 S.W.2d 294 (Tenn. Cr. App. 1994)) (The proper procedural vehicle  for a prisoner seeking review of a disciplinary action of the Department of Correction is by petition for common law writ of certiorari.)[1].  Under such a petition, a court's review of administrative  agency decisions is very limited.  Tenn. Code Ann. § 27-8-101 provides:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Where a petitioner challenges the correctness of the decision of the board or other decision-maker, the common law writ does not provide a remedy. *Yokley v. State*, 632 S.W.2d 123, 126 (Tenn. Ct. App. 1981) ("[T]he common law writ of certiorari is not available to test the intrinsic correctness of the law or facts of a particular case.")  Because the intrinsic correctness of the decision of the lower tribunal is not subject to judicial review,  *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994),  the scope of review is generally limited to a determination of whether the administrative body acted within its jurisdiction or acted arbitrarily, capriciously, or

---

[1]*See also Perry v. Cold Creek Correctional Facility Disciplina ry Bd.,* No. M1999-01898-COA-R3-CV, 2000 WL 1137710 at *3 (Tenn. Ct. App. Aug. 9, 2000) (no Tenn. R. App. P. 11 application filed) *and  Buford v. Tennessee Dep't. of Correction*, No. M1998-000157-COA-R3-CV, 1999 WL 1015672 at *3-4 (Tenn. Ct. App. Nov. 10, 1999) (no Tenn. R. App. P. 11 application filed) (determining that the common law writ, as opposed to the statutory writ, is the appropriate mechanism).

illegally. *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). In *Cooper,* the Supreme Court explained, "The scope of review under the common law writ does not ordinarily extend to a redetermination of the facts found by the administrative body." *Id.*

The writ itself is an order issued by a superior court to compel an inferior tribunal to send up its record for review. *Pigg v. Casteel*, No. 01A01-9807-CH-0038, 1999 WL 166499 at *2 (no Tenn. R. App. P. 11 application filed). In order to warrant issuance of the writ, the petition must sufficiently allege that the inferior tribunal acted outside its jurisdiction, illegally, fraudulently, or arbitrarily. The writ of certiorari is considered an extraordinary remedy, and it is not available as of right. *Clark v. Metro. Gov't of Nashville and Davidson County*, 827 S.W.2d 312, 316 (Tenn. Ct. App. 1991). The decision of whether to grant the writ, thus compelling the filing of the record of proceedings below, lies within the sound discretion of the trial court. *Boyce v. Williams*, 215 Tenn. 704, 713-14, 389 S.W.2d 272, 277 (1965).

In the case before us, the petition for writ of certiorari was met with a motion to dismiss, pursuant to Tenn. R. Civ. P. 12.02(6), for failure to state a claim upon which relief can be granted. Because the petition merely seeks the filing of the record and judicial review of the proceedings and decision, a motion to dismiss it at this stage can only be granted if the petition fails to make any allegations which justify review of the record under the common law writ of certiorari standards.[2] In determining the sufficiency of the allegations,

> Conclusory terms such as "arbitrary and capricious" will not entitle a petitioner to the writ. At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached. If the agency or board has reached its decision in a constitutional or lawful manner, then the decision would not be subject to judicial review.

*Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d at 873.

## III. Proper Parties

We first consider the issue of who are the proper defendants or respondents in a challenge to a prison disciplinary decision. The issue arose herein because Mr. Seals named as defendants James Bowlen, the warden of Southeastern Tennessee State Regional Facility, the STSRF Disciplinary Board, and the Department of Correction. The State moved to dismiss all defendants except the Department asserting that the Department was the only proper defendant in a common law writ of certiorari challenge to a prison disciplinary proceeding.[3] The trial court agreed and

---

[2] It is important to recognize the distinction between granting the writ for review of the record, Tenn. Code Ann. § 27-9-109, and granting relief after review, Tenn. Code Ann § 27-9-111.

[3] In its memorandum in support of the motion to dismiss, the State cites Tenn. Code Ann. § 41-24-110 in support of its argument that "writs of certiorari challenging inmate disciplinary actions taken by employees of the Tennessee

(continued...)

dismissed "the individual respondents as improper parties." On appeal, Mr. Seals argues that the trial court erred in dismissing the disciplinary board and the warden and holding that only the Department of Correction was a proper party.

Tennessee Code Annotated §§ 27-9-101 *et seq.* establish certain procedural requirements applicable to the writ of certiorari. The statutory provision regarding proper defendants states:

> The petition shall be addressed to the presiding chancellor and shall name as defendants the particular board or commission and such other parties of record, if such, as were involved in the hearing before the board or commission, and who do not join as petitioners.

Tenn. Code Ann. § 27-9-104 (1980).

The words "the particular board or commission" must be interpreted by reference to Tenn. Code Ann. § 27-9-101, which provides for review of "any final order or judgment of any board or commission functioning under the laws of this state." As this court stated in *Reid v. Lutsche*, No. 01A01-9803-CH-00168, 1999 WL 166543 at *3 (Tenn. Ct. App. Mar. 29, 1999) (no Tenn. R. App. P. 11 application filed), a petition for common law writ of certiorari challenges the decision of an "inferior tribunal," and when the challenge is to a prison disciplinary decision, that tribunal is the disciplinary board.[4]

In addition, Tenn. Code Ann. § 27-8-101 authorizes the common law writ of certiorari as the method to obtain judicial review of an "inferior officer." *See, e.g., Pack v. Royal-Globe Ins.*

---

[3](...continued)
Department of Correction should name the Department of Correction and only the Department of Correction as the respondent, as ultimately any relief awarded can only be afforded by the Commissioner of the Department." The cited statute applies to contracts with private entities for the operation of prisons, and, indeed, subsection (5) places limitations on the ability of non-governmental employees and entities to impose disciplinary sanctions. *Mandela v. Campbell*, 978 S.W.2d 531, 533 (Tenn. 1998). There is nothing in the record before us, however, to indicate that Southeastern Tennessee State Regional Correctional Facility is operated by a private prison contractor. Thus, Tenn. Code Ann. § 41-24-110 is not applicable to this case, and neither are opinions involving the proper defendants in cases arising from disciplinary boards composed of employees of a private contractor. *See, e.g., Buford v. Tennessee Dep't. of Correction*, 1999 WL 1015672 at *4-5; *Wilson v. South Cent. Correctional Facility Disciplinary Bd.*, No. M2000-00303-COA-RM-CV, 2000 WL 1425228, at *2-6 (Tenn. Ct. App. Sept. 8, 2000) (no Tenn. R. App. P. 11 application filed). In *Turner v. Campbell*, 15 S.W.3d 466, 468 (Tenn. Ct. App. 1999), this court determined that a petition for writ of certiorari was properly dismissed because it named as the only defendant the chair of the prison disciplinary board who was an employee of a private corporation operating the prison under contract with the state. This court stated, "The writ should be directed to the governmental agency that is responsible for the actions of which the petitioner complains." *Id.*

[4]We are aware of the language in *Reid v. Lutsche* that the proper party to name as a defendant was the Department of Correction, "because ultimately only the Department can give him the relief he seeks." 1999 WL 166543 at *1. However, that language must be interpreted in the context of the petitioner's naming as a respondent an individual employee who had no part in the disciplinary decision. The language discussed above is more clearly on point with the issue presented herein.

*Companies*, 224 Tenn. 452, 465, 457 S.W.2d 19, 24 (1970) (common law writ of certiorari used to review whether commissioner of insurance, as an inferior tribunal or officer, exceeded the jurisdiction conferred upon him or acted illegally)*; Mutual Aid v. Williams*, 219 Tenn. 95, 106 (1966) (courts have jurisdiction to review power of officers where they act in arbitrary manner or beyond their jurisdiction); *Boyce v. Williams*, 215 Tenn. 704, 712-13, 389 S.W.2d 272, 276-77 (1965) (common law writ of certiorari used to seek review of decision of commissioner of insurance, under statute allowing review of decision of inferior officer).

The question of whether a particular governmental entity or official is properly named as a defendant, therefore, is answered by the decision being challenged and the decision-making authority assigned to that entity or official under the law.[5] Such defendants may be identified by their position, such as the STSRF Disciplinary Board, or by a combination of their names and postions, such as James Bowlen, Warden.[6]

It is true that the Department of Correction is vested with the management and government of state prisons, Tenn. Code Ann. § 4-6-102, and in describing this grant of authority, our Supreme Court has stated:

> The legislature has provided the TDOC considerable deference and broad discretionary powers to enable TDOC to manage its tremendous responsibilities . . . . This broad grant of legislative discretion necessarily includes the power to establish policies and procedures for handling disciplinary matters.

*Mandela*, 978 S.W.2d at 534.

The Department has adopted such policies, the Uniform Disciplinary Procedures, which are internal operating procedures detailing how disciplinary charges are to be processed against inmates. Those policies are intended to "provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates." TDOC Policy Index # 502.01(II). They also assign various decision-making responsibilities to employees, officials, or entities regarding disciplinary procedures and sanctions.[7] Under those policies, the disciplinary board is the body which conducts the hearing. TDOC Policy Index # 502.01 (VI)(A)(1)(a) and (E). The board makes the decision of

---

[5] In *O'Leary v. Hall*, No. 03A01-9507-CH-00235, 1996 WL 84852 at *2-3 (Tenn. Ct. App. Feb. 27, 1996) (no Tenn. R. App. P. 11 application filed), this court interpreted Tenn. Code Ann. § 27-9-104 as requiring the naming of the planning commission and/or a commission member in a complaint challenging a zoning variance.

[6] Simply naming individuals, by name and/or position, does not constitute an action against a person in his individual capacity, *Cuzick v. Bass*, No. 02A01-9809-CV-00244, 1999 WL 145209 at *4 (Tenn. Ct. App. Mar. 18, 1999) (no Tenn. R. App. P. 11 application filed), and is not improper in naming defendants to a petition for common law writ of certiorari. *See, e.g., Gamble v. Kelley*, 219 Tenn. 311, 409 S.W.2d 374 (1966).

[7] For example, this court has held that Policy #9502.02 requires the commissioner's designee, in those proceedings in prisons operated by a private contractor, "to take an active and decisive role in the disciplinary process." *Wilson v. South Cent. Correctional Facility Disciplinary Board*, 2000 WL 1425228 at *3.

whether a disciplinary infraction has occurred, TDOC Policy Index # 502.01(VI)(E)(2)(i),(j)and (k), and is specifically authorized to dispose of cases in an enumerated variety of ways, including:

(1) Dismissal of charges;
(2) Verbal warning;
(3) Written warning;
(4) Restriction of recreational privileges for up to sixty days;
(5) Modification of visits for drug-related offenses;
(6) Punitive segregation, for up to thirty days for each separate offense, with a maximum of sixty days. However, any continuous confinement exceeding thirty days must be reviewed and approved by the warden.
(7) Referral to the district attorney for criminal prosecution.
(8) Recommendation for reclassification.
(9) Recommendation for dismissal from a job or program assignment;
(10) Recommendation of loss of good, honor, incentive, good conduct, PSRC or prisoner sentence credits, or extension of release eligibility date, "which may only be imposed by the Class A disciplinary board"
(11) Reduction in pay, reduction in inmate trust fund account, or placing a hold on the inmate trust fund account for certain obligations, with specified limitations.
(12) Assignment of extra duty.
(13) Any punishment mandated by enumerated other policies: loss of sentence reduction credits, extension of release eligibility date, punitive segregation, and imposition of a fee under #502.02 (Disciplinary Punishment Guidelines); sanctions for drug and alcohol related offenses under Policy # 506.21(Inmate Drug/Alcohol Testing and Sanctions); sanctions related to incoming and outgoing mail under Policy #507.02 (Inmate Mail);
(14) Any combination of the above, except for (1) and (2).

TDOC Policy Index # 502.01(VI)(E)(3)(a).

As the list makes clear, some sanctions are recommended, not imposed by the board, apparently leaving imposition to a higher-ranking official. Additionally, under the policies, an inmate may appeal the disciplinary board's decision to the warden. TDOC Policy Index # 502.01 (VI)(F)(1). Decisions involving specified types of sanctions may be further appealed to the commissioner. TDOC Policy Index # 502.01 (VI)(F)(2). ("Only convictions for disciplinary offenses in which the inmate's sentence was extended by the removal of accumulated sentence credits may be appealed to this level.")

Therefore, it is clear that both the disciplinary board and the warden are assigned decision-making authority regarding disciplinary proceedings. In the case before us, Mr. Seals asserts that the disciplinary board acted arbitrarily and illegally, by depriving him of due process, in reaching its decision finding him guilty of assault. He also claims the warden acted arbitrarily and illegally in affirming the board's decision on appeal.

We can come to no other conclusion but that the board and the warden were proper respondents and should not have been dismissed. Accordingly, we reverse the dismissal of those two parties. The trial court's dismissal of the board and the warden, however, did not result in dismissal of Mr. Seals's petition, because the Department remained as a defendant. Therefore, we proceed to the substance of Mr. Seals's claim.

IV. Propriety of Dismissal under Tenn. R. Civ. P. 12.02(6)

In his petition seeking judicial review, Mr. Seals alleged that the board denied him due process by disciplining him for assaulting his cellmate when he purportedly acted in self-defense. Mr. Seals argues that the trial court committed reversible error by failing to liberally construe the petition in his favor and to accept his allegations as true when it dismissed his claim. Mr. Seals's various allegations hinge on the assertion that the board denied him due process. An allegation of denial of due process is an allegation that the board and warden acted arbitrarily and illegally. *Davis v. Campbell*, No. 01A01-9712-CH-00755, 1998 WL 812533 at *1 (Tenn. Ct. App. Nov. 25, 1998) (no Tenn. R. App. P. 11 application filed). This court has held that the common law writ of certiorari is available to correct the "essential illegality" of a denial of procedural rights guaranteed by the federal and state constitutions. *State v. Womack*, 591 S.W.2d 437, 442 (Tenn. Ct. App. 1979).

Any due process analysis must begin with a determination of what process, if any, was due in the circumstances presented. The United States Supreme Court has several times discussed the extent of the due process guarantees applicable to prison disciplinary proceedings and has held that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975, 41 L. Ed. 2d 935, 951 (1974) (citing *Morrissey v. Brewer*, 408 U.S. at 488, 92 S. Ct. at 2603). In *Wolff*, the Court recognized that the unique requirements of prison life necessarily involve the loss by prisoners of many rights afforded to unincarcerated citizens. The Court also established the minimal constitutional requirements which must be met in prison disciplinary proceedings, including written prior notice of the charges, an opportunity to present witness when not hazardous to institutional safety and goals, an impartial decisionmaker, and a written statement as to the evidence relied on and the reason for the action taken. *Wolff*, 418 U.S. at 564-66.

The Supreme Court later limited the application of *Wolff*, essentially holding that a prisoner's liberty or property interest is not sufficient to trigger due process in a number of situations where disciplinary sanctions are imposed. An inmate is only entitled to the limited due process rights provided in *Wolff* when the sanctions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-85, 115 S. Ct. 2293, 2300-01(1995). The inmate in *Sandin* had been placed in punitive segregation for thirty days due to a disciplinary infraction. The Court held that those who are incarcerated pursuant to a valid

conviction are not entitled to constitutional due process in prison disciplinary procedures that result in brief periods of disciplinary segregation, and determined that thirty days was a brief period.[8]

Mr. Seals alleges that the sanctions given him by the disciplinary board included ten days in punitive segregation, increase in his security status from minimum to close, transfer to a maximum security facility, loss of one month of good behavior credits, and $5 disciplinary fee. Because the State responded to the petition with a Tenn. R. Civ. P. 12.02 motion, and the trial court dismissed on the basis of that motion, we must assume, for purposes of the motion, that the facts asserted by Mr. Seals are true.[9] *McClenahan v. Cooley*, 806 S.W.2d 767, 768 (Tenn. 1991).

While most of the punishments imposed on Mr. Seals do not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the loss of previously earned sentence reduction credits has been found to implicate an interest sufficient to invoke due process. *See Greene v. Tennessee Dep't. of Correction*, No. 01A01-9608-CH-00370, 1998 WL 382204 at *3 (Tenn. Ct. App. Jul. 10, 1998) (no Tenn. R. App. P. 11 application filed) (prisoner had a property interest in accumulated, or already earned, good and honor time credits).[10] The State does not argue herein that Mr. Seals was not entitled to the limited procedural safeguards enumerated in *Wolff*.

In those situations where the limited due process rights of *Wolff* apply, those limited rights are: "advance written notice of the charges at least twenty-four hours prior to the hearing, a limited

---

[8]This court has applied the *Sandin* holding to various types of sanctions:

*Sandin* focuses on the nature of the deprivation imposed upon the inmate. Courts have held that the following punishments do not create protected liberty interests under the *Sandin* standard: placement in thirty day segregated confinement, placement in five day segregated confinement suspended for sixty days, loss of six months of visitation privileges, and payment for a drug screen, *see Dotson v. TDOC*, No. 01A001-9811-CV-00596, 1999 WL 430405 at *1 (Tenn. Ct. App. June 29, 1999); transfer to a more severe prison facility, *see Mack v. Jones*, No. 03A01-9806-CV-00215, 1999 WL 172645 at *3 (Tenn. Ct. App. Mar. 24, 1999); removal from a prison job, *see Blackmon v. Campbell*, No. 01A01-9807-CH-00361, 1999 WL 85518 at *1 (Tenn. Ct. App. Feb. 23, 1999); and placement on lockdown, *see Hawkins v. Sundquist*, No. 01A01-9803-CH-00164, 1999 WL 22386 at *1 (Tenn. Ct. App. Jan. 21, 1999).

*Coffelt v. Tennessee Dep't. of Correction*, No. M1999-02269-COA-R3-CV, 2000 WL 1473860 at *3 (Tenn. Ct. App. Oct. 5, 2000) (no Tenn. R. App. P. 11 application filed).

[9]In addition, because the writ was not issued, the record of the proceedings below was not filed, was not before the trial court, and is not before us.

[10]In addition, state statutes impose procedural due process requirements for the extension of a release eligibility date, Tenn. Code Ann. § 40-35-501(l), and provide for the loss by a prisoner of previously earned sentence reduction credits only in certain circumstances. Tenn. Code Ann. § 41-21-236(a) and (g). State statutes can create a protected liberty or property interest in accumulated good time credits. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 2773, 86 L. Ed. 2d 356, 365 (1985). Department of Correction policies recognize additional procedural requirements related to taking away a prisoner's accumulated sentence credits.

right to call witnesses and present documentary evidence, an impartial decision maker, and a written statement of the evidence relied upon, with the reasons stated for the action taken." *Davis v. Campbell*, 1998 WL 812533 at *2. In the case before us, Mr. Seals does not allege he was not given prior notice of the charges against him, and does not allege that he did not receive a written statement of the evidence. To the contrary, his petition alleges he was given notice of the charge against him two days before the hearing, and specifically refers to the board's written statement, referring to it as "Finding of Fact and Specific Evidence Relied Upon," and disputes the accuracy of the findings.

Mr. Seals does, however, claim that the disciplinary board members were biased against him. His claims of bias are based on various Board member's alleged facial expressions, body language and extraneous comments, none of which, when taken as true, demonstrate a bias rising to the level of a due process violation. Mr. Seals did not allege that the board members had a "former personal involvement in any disciplinary or adjustment matter with the inmate" which might raise a question of bias. *Redding v. Fairman,* 717 F.2d 1105, 1112-13 (7th Cir. 1983) (due process requires only that the hearing officer have a "[l]ack of former personal involvement in any disciplinary or adjustment matter with the inmate"), *cert. denied,* 465 U.S. 1025, 124 S. Ct. 1282, 79 L. Ed. 2d 685 (1984). It is well-established that administrative decision makers are presumed to discharge their duties with honesty and integrity. *Cooper v. Williamson County Bd. of Educ.*, 803 S.W.2d 200, 203 (Tenn. 1990); *Jones v. Greene*, 946 S.W.2d 817, 825 (Tenn. Ct. App. 1996). Mr. Seals's conclusory allegations are insufficient to satisfy the heavy burden of persuasion necessary to overcome that presumption. *See Cooper,* 803 S.W.2d at 203.

We have held, "Demeanor is a subjective thing that cannot be meaningfully reviewed in the absence of a transcript of the proceedings. While hostility could theoretically rise to the level of an unconstitutional bias, a decision to deny parole will not be undermined because a Board member was unsympathetic, hostile, or even rude, as long as the board's decision has factual and legal support." *Hopkins v. Tennessee Bd. of Paroles*, No. M2000-01956-COA-R3-CV, 2001 WL 422971 at *2 (Tenn. Ct. App. April 26, 2001) (no Tenn. R. App. P. 11 application filed). Where the record supports the decision and nothing indicates an action based on caprice or bias, conclusory allegations of bias will not overcome the presumption that administrative decision makers performed their duties in good faith.

Mr. Seals's second claim of due process violation was based on his allegation that the board did not allow him to call a witness. The right to present evidence at prison disciplinary proceedings is not unlimited, although an inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566, 94 S. Ct. at 2979-80, 41 L. Ed. 2d at 596-97. "Prison officials have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.*

> [T]he Supreme Court has stated that the right of an inmate to obtain the presence of
> witnesses in a disciplinary proceeding is limited by the "necessary discretion" of

prison officials, who must balance due process against the requirements of institutional safety and valid correctional goals. Such goals include "the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff v. McDonnell* at 566. The Court went on to rule that prison administrators may tailor their procedures and policies to meet the individual requirements of their own institutions.

*Davis v. Campbell*, 1998 WL 812533 at *3.

Mr. Seals alleges he was allowed to present one witness, another inmate, Mr. McCaig, who testified that he saw the beginning of the altercation and that Mr. Seals was attacked by his cellmate, Mr. Terrell, without provocation. This testimony is relevant to Mr. Seals's defense of self-defense, discussed below. Mr. Seals alleges he had another witness, Mr. Jones, whose testimony would have been that Mr. Terrell had previously attacked Mr. Jones when they were cellmates.[11] Mr. Seals argues that this testimony was relevant to demonstrate Mr. Terrell's tendency to assaultive behavior.

Mr. Seals also asserts that in his appeal to the warden he provided an affidavit from the witness who was not allowed to testify. The warden responded that "the statement addressed prior assaultive behavior and has no bearing on this incident." The Department's Uniform Disciplinary Procedures set out the procedure to be followed at a disciplinary hearing, and provide, in pertinent part, "The inmate shall be permitted to present the testimony of relevant witness(es), unless allowing a witness to appear would pose a threat to institution safety or order." TDOC Policy Index # 502.01(c)(6). This policy is well within the Department's discretion to regulate disciplinary hearings. Even tribunals which are required to follow the stricter requirements of the rules of evidence may exclude evidence which is not relevant, Tenn. R. Evid. 402, or exclude even relevant evidence in certain circumstances, Tenn. R. Evid. 403. We find no due process violation or abuse of the board's discretion regarding evidentiary matters in its refusal to hear testimony about an unrelated event. The question before the board was whether Mr. Seals committed the offense of assault.

Mr. Seals's primary objection to the board's decision, however, relates to its weighing of the evidence. He adamantly maintains that the board denied him due process by disciplining him for assaulting his cellmate when he purportedly acted in self-defense. Mr. Seals asserts that the board refused to give proper weight to testimony by an eyewitness that Mr. Seals's cellmate started the altercation and refused to hear another inmate's testimony that Mr. Seals's cellmate was mentally unbalanced and had previously attacked him. The crux of his complaint is that he was wrongfully convicted of assault when he acted in self defense.

---

[11]Although Mr. Seals asserts that Mr. Jones was ready and willing to testify, he also states that Mr. Jones was scheduled to meet with the parole board on the day of the disciplinary hearing. "However, by the time the D-Board agreed to allow a statement to be introduced from inmate Jones, he had already gone to the parole board meeting." Thus, it would appear that the witness was unavailable for the hearing.

In his petition, however, Mr. Seals also states that when the correctional officer arrived on the scene of the altercation, both parties were struggling on the floor and Mr. Seals was "elbowing" Mr. Terrell in an attempt to make him let go.  He also states that the cellmate "fell unconscious." According to Mr. Seals, the cellmate remained unconscious and was transported to a hospital where he regained consciousness. Mr. Seals acknowledges that the charging officer testified at the hearing, but states that the officer admitted he was not present when the altercation began.  "Without witnessing who had actually threw the first blow or otherwise started the altercation, officer Harper had no idea if this was only a fight or an actual assault."  According to Mr. Seals, the board found that Mr. Seals had refused to stop fighting when ordered to do so until he was restrained by the correctional officer who testified.  Mr. Seals also alleges that the warden found, as did the disciplinary board, that Mr. Seals refused to stop fighting until grabbed by the officer.

The Department's policies regarding inmate discipline define the offense of assault as "Any willful attempt to inflict injury upon the person of another when coupled with an apparent present ability to do so."  TDOC Policy Index # 502.05 (VI)(A)(3)  Mr. Seals, in essence, alleges that the board's finding that he committed the offense was incorrect because he was assaulted first and acted in self-defense.  That allegation is an attack on the intrinsic correctness of the board's decision and courts have no authority under the common law writ of certroiari to inquire into the correctness of the board's decision. *Powell v. Parole Eligibility Bd.*, 879 S.W.2d at 873.  In *Harris v. Hensley*, No. M1999-00654-COA-R3-CV, 2000 WL 630924 at *4 (Tenn. Ct. App. May 17, 2000) (no Tenn. R. App. P. 11 application filed), the petitioning inmate argued that the assault of which the prison disciplinary board convicted him resulted from a correctional officer's unauthorized use of force on him, and his assaultive reaction was not willful.  This court determined that the inmate's allegations were an attack on the intrinsic correctness of the board's decision and, as such, could not be considered under the common law writ of certiorari.  *Id*. at *5.  Mr. Seals's claims are very similar.

Mr. Seals asks us to reweigh the evidence presented to the board, and this we are not authorized to do under the common law writ of certiorari. *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d at 179; *Hoover v. Metropolitan Bd. of Zoning Appeals,* 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996). The writ is justified only if there is no material evidence in the record to support the finding of the lower tribunal. *Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d at 904-05.

Due process requires no more.  Due process requires that "some evidence" support the board's decision to revoke good time credits, if such a revocation implicates a protected property or liberty interest. *See Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 2773, 86 L. Ed. 2d 356, 365 (1985).  In *Hill*, the Supreme Court stated that the requirement of some evidence does not "imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review."  472 U.S. at 454, 105 S. Ct. at 2773, 86 L. Ed. 2d at 365.

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement.  Prison disciplinary proceedings take place in a highly charged

atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. *See Wolff,* 418 U.S. at 562-563, 567-569, 94 S. Ct. at 2977- 2978, 2980-2981. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Hill*, 472 U.S. at 455, 105 S. Ct. at 2774, 86 L. Ed. 2d at 366.

Although Mr. Seals adamantly insists that there was no evidence to contradict his and his witness's testimony that Mr. Terrell attacked him initially, that allegation alone does not mean there was no evidence to support the board's decision that Mr. Seals committed the offense of assault. Mr. Seals asserts that he disputed the officer's testimony that he did not stop hitting Mr. Terrell when ordered to do so. He states, "as petitioner testified at the hearing, he promptly complied with officer Harper's orders to get up off of inmate Terrell." As discussed above, Mr. Seals also acknowledges that Mr. Terrell was rendered unconscious during their altercation and required medical attention. Finally, Mr. Seals does not deny that an altercation occurred or that evidence was presented at the hearing that an altercation occurred which ended with Mr. Seals and Mr. Terrell wrestling on the floor.

No matter how sincerely Mr. Seals believes that he could not be guilty of assault if he acted in reaction to an unprovoked attack on him, the definition of that offense is not so limited. Where there is some basis for the board's decision, courts are not authorized to substitute their judgment for that of a prison disciplinary board.

It must be borne in mind that the functions of certiorari are simply to ascertain the validity of the proceedings before a court of justice, either on the charge of their invalidity, because the essential forms of the law have not been observed, or on that of the want of jurisdiction in the court entertaining them. The writ has never been employed to inquire into the correctness of the judgment rendered where the court had jurisdiction, and was therefore competent. Hence it has been held that the supervisory jurisdiction of the court on a certiorari must be restricted to an examination into the external validity of the proceedings had in the lower court. It cannot be exercised to review the judgment as to intrinsic correctness, either on the law or on the facts of the case. (internal citation omitted).

*State ex rel. McMorrough v. Hunt*, 137 Tenn. 243, 250-51, 192 S.W. 931, 933 (1917). Where the essence of the complaint is an attack on the correctness of the board's decision, dismissal is warranted. *Turner v. Tennessee Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999). Because, taking the facts alleged in his petition as true, we must conclude there was some evidence presented to the board to show an assault, and consequently, Mr. Seals has failed to state a claim warranting issuance of the writ and review by the courts.

We affirm the trial court's determination that the petition failed to state a claim that he was deprived of due process rights and, therefore, failed to allege that the Board acted illegally or arbitrarily. Therefore, we affirm the trial court's dismissal of the petition for failure to state a claim under the common law writ of certiorari.

## V. Conclusion

In summary, we reverse the trial court's dismissal of the warden and the disciplinary board. We affirm the dismissal of the petition. Costs of this appeal are assessed equally between the parties.

_____
PATRICIA J. COTTRELL, JUDGE